# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DEPUY SYNTHES SALES, INC.<br><br>　　　　　　Plaintiff,<br><br>　　　　v.<br><br>RYAN EDWARDS,<br><br>　　　　　　Defendant. | 2:14-cv-102-WY |

## MEMORANDUM

YOHN, J.                                                                                                          May 15, 2014

DePuy Synthes Sales, Inc. ("Synthes") brings a breach of contract action against its former employee Ryan Edwards to enforce restrictive covenants contained in an employment agreement signed by Edwards on November 12, 2009. Presently before me is Edwards's motion to dismiss, transfer, or stay the action under Rule 12(b)(2), Rule 12(b)(3), Rule 12(b)(6), and 28 U.S.C. § 1404(a). For the following reasons, Edwards's motion will be denied.

### I.    Background[1]

Synthes is a Massachusetts-based medical device manufacturer with a craniomaxillofacial ("CMF") surgical implant division based in West Chester, Pennsylvania.[2]

---

[1] This factual background represents the plaintiff's well-pleaded allegations in its complaint. At this early stage of litigation, I construe the plaintiff's allegations in the light most favorable to the plaintiff. *See Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006).

[2] Synthes is not the same entity that hired Edwards in 2008 or with which he signed his employment agreement in 2009. Edwards was first employed by Synthes USA Sales, LLC, a West Chester, Pennsylvania-based company. In 2012, Synthes USA Sales, LLC merged with the DePuy Companies of Johnson & Johnson to form the Massachusetts-based company that is the plaintiff in this case. *See* Johnson & Johnson Press Release, "Johnson & Johnson announces completion of Synthes acquisition," *available at* http://www.jnj.com/news/all/johnson-and-johnson-announces-completion-of-synthes-acquisition. It appears from the complaint and oral representations to the

1

Edwards, a Californian, joined Synthes's CMF division in 2008 as an associate sales consultant. Concurrent with his hiring, Edwards signed a non-disclosure agreement as well as a separate employment agreement containing restrictive covenants not at issue in this case.

In 2009, Edwards accepted a promotion to sales consultant. This put Edwards in charge of Synthes's sales and business development efforts within a particular region of the San Francisco Bay area. Within his region, Edwards's job included formulating and implementing Synthes's pricing and customer recruitment strategies; developing and maintaining relationships with physicians and hospital personnel who play roles in determining what implants and/or instrumentations are used in particular surgeries; and serving as a technical resource to surgeons using Synthes's products. In preparation for this job, Edwards received specialized training from Synthes on the use of Synthes's products and the medical procedures with which they are associated, as well as coaching from Synthes on how to educate surgeons and operating room personnel about using Synthes's products. Though Edwards lived and worked in California, he received administrative, managerial, and training support from Synthes's offices in Pennsylvania; communicated daily with Synthes's Pennsylvania offices and Pennsylvania-based Synthes personnel; relied on Pennsylvania-originating product samples in developing customer relationships; and, when he completed sales, sent customer purchase orders to Synthes's Pennsylvania offices.

On November 12, 2009, concurrent with his promotion to sales consultant, Edwards signed a second employment agreement, which is the document at issue in this litigation. This 2009 agreement contained restrictive covenants prohibiting Edwards from (1) using or disclosing

---

court that Edwards thereafter worked for a CMF surgical implant division of the new entity based in West Chester. That division appears to continue the CMF surgical implant business that Synthes USA Sales, LLC operated from West Chester prior to the merger. Neither party raises issues relating to the changing corporate forms of the Synthes entities in their motions, nor are these changes relevant to the disposition of this motion. For convenience purposes only, I will refer to a single "Synthes" as Edwards's employer from 2008 to 2013.

Synthes's confidential information; and (2) soliciting or servicing Synthes's customers located in his geographic area or that he dealt with in the previous two years, or soliciting or servicing prospective customers that he contacted in the previous two years. The agreement contained a choice of law and forum selection clause stating:

> This agreement will be governed by Pennsylvania law applicable to contracts entered into and performed in Pennsylvania. I agree that this agreement shall exclusively be enforced by any federal or state court of competent jurisdiction in the Commonwealth of Pennsylvania and hereby consent to the personal jurisdiction of these courts.

On December 31, 2013, Edwards resigned from Synthes to take a position with the Stryker company, a different manufacturer of CMF surgical implants and, allegedly, a direct competitor of Synthes. The day of his resignation, Edwards filed a lawsuit against Synthes in the Northern District of California seeking declaratory judgment that the restrictive covenants in the 2008 employment agreement were contrary to California law and, therefore, invalid. On January 8, 2014, Synthes filed this action claiming that Edwards's employment with Stryker puts him in breach of the nonsolicitation covenants of his 2009 employment agreement and the nondisclosure covenant of his 2008 employment agreement. Concurrently with filing suit, Synthes moved for a preliminary injunction to enforce the covenants. On January 10, 2014, Edwards filed an amended complaint in the California litigation. Under the amended complaint, Edwards sought declaratory judgment against the restrictive covenants in the 2009 employment agreement as well as against the restrictive covenants in the 2008 employment agreement.

On January 24, 2014, Synthes, pointing to the forum selection clause in the 2009 agreement, moved in the California court to dismiss that action or to transfer it to the Eastern District of Pennsylvania. On February 3, 2014, Edwards filed the instant motion to dismiss this action, transfer it to the California court, or impose a stay of proceedings. On February 20, 2014, Synthes filed a second motion to transfer in the California action, this time on the basis of 28

3

U.S.C. § 1404(a). On March 10, 2014, Edwards filed a motion for summary judgment in the California action, which the California court thereafter denied without prejudice on the basis that the motion was premature. On April 3, 2014, the California court held a hearing on Synthes's motion to dismiss and its separate motion to transfer, and it referred the matter to an early evaluation by an independent party. The California court has not ruled on either motion.

On April 28-29, 2014, after the conclusion of expedited discovery, this court heard opening arguments and two days of testimony on Synthes's motion for a preliminary injunction. Neither party sought to continue the hearing due to the pending motions in both courts. The hearing was continued until June 4, 2014 to permit Edwards to depose a witness called by Synthes who was disclosed as an injunction hearing witness subsequent to the close of discovery.

## II.     The Instant Motion

Edwards advances five arguments for why I should dismiss this action, transfer it to the California court, or order a stay. He argues that (1) the "first-filed" rule requires deference to the parallel litigation in the Northern District of California; (2) Edwards lacks sufficient contacts with Pennsylvania to be subject to the court's personal jurisdiction; (3) there is no proper venue in the Eastern District of Pennsylvania; (4) even if there is personal jurisdiction and venue, the action should be transferred to the California court under 28 U.S.C. § 1404; and (5) Synthes fails to state a claim on which relief can be granted.

### A.     First-Filed Rule

Edwards first seeks dismissal or transfer based on the first-filed rule, which "gives a court the power to enjoin the subsequent prosecution of proceedings involving the same parties and the same issues already before another district court." *E.E.O.C. v. Univ. of Pennsylvania*, 850 F.2d 969, 971 (3d Cir. 1988) *aff'd,* 493 U.S. 182 (1990). This "is not a rigid or inflexible rule to be

mechanically applied," and "district courts have always had discretion to retain jurisdiction given appropriate circumstances justifying departure from the first-filed rule." *E.E.O.C.*, 850 F.2d at 976, 972. "[T]he letter and spirit of the first-filed rule . . . are grounded on equitable principles," and a federal district court presented with a second-filed parallel lawsuit must remember that "the rule's primary purpose is to avoid burdening the federal judiciary and to prevent the judicial embarrassment of conflicting judgments" and that "fundamental fairness dictates the need for fashioning a flexible response to the issue of concurrent jurisdiction." *Id.* at 977.

Even assuming that the California litigation—brought originally on Edwards's 2008 employment agreement—is properly considered first-filed, equitable considerations militate against dismissal, transfer, or stay on the basis of the rule.

First, transfer is improper in light of the 2009 agreement's forum selection clause. As the Supreme Court has made plain, a valid forum selection clause "represents the parties' agreement as to the most proper forum[, and] the enforcement of valid forum selection clauses, bargained for by the parties, protects their legitimate expectations and furthers vital interests of the justice system." *Atl. Marine Const. Co., Inc. v. U.S. Dist. Court for W. Dist. of Texas*, 134 S. Ct. 568, 581 (2013). Accordingly, "where [a] forum selection clause is valid . . . [the party seeking to depart from it] bears the burden of demonstrating why they should not be bound by their contractual choice of forum." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 880 (3d Cir. 1995). "Forum selection clauses are 'prima facie valid and should be enforced unless enforcement is shown by the resisting party to be unreasonable under the circumstances.'" *Foster v. Chesapeake Ins. Co., Ltd.*, 933 F.2d 1207, 1219 (3d Cir. 1991) (quoting *The Bremen v. Zapata Off–Shore Co.,* 407 U.S. 1, 10). Under this standard, "a forum selection clause is unreasonable where the defendant can make a strong showing *either* that the forum thus selected is 'so gravely difficult

5

and inconvenient that he will for all practical purposes be deprived of his day in court' *or* that the clause was procured through 'fraud or overreaching.'"[3] *Id.* (quoting *The Bremen*, 407 U.S. at 18, 15).

As stated above, when Edwards was promoted to sales consultant and agreed to the covenants contained in his 2009 employment agreement, he compacted with Synthes that any review of those covenants would be by the federal or state courts of Pennsylvania.[4] Contending that this agreement to litigate in Pennsylvania should not bar transfer based on the first-filed rule, Edwards states the forum selection clause was the product of overreach by Synthes and is therefore invalid. *See id.* In support of this contention, Edwards asserts only that, when he declined to pursue a promotion to a sales consultant position in Washington eight months after becoming employed by Synthes, his supervisor told him that "if [he] continued to turn down the sales consultant positions, there was no guarantee that [he] could continue employment with Synthes." Even if it is the case, as Edwards says, that this made him feel pressure to accept the sales consultant position he was promoted to in 2009, the alleged statement by Edwards's supervisor hardly constitutes "a strong showing . . . that the clause was procured through . . . overreaching" by Synthes. *See id.* Edwards does not allege that he did not want to be promoted to sales consultant when the position became available in his home region, nor that his superiors told him that he could lose his job if he did not pursue the California position specifically, nor that he knew of any associate sales consultants who had in fact lost their jobs because they

---

[3] Although Edwards does not advance a convenience argument related to the first-filed rule, I note that, at the hearing on the preliminary injunction request, Edwards acknowledged that his new employer was paying his costs of litigation.

[4] Edwards contends in his brief that, as was the case in *Koresko v. Nationwide Life Ins. Co.*, 403 F. Supp. 2d 394, 400 (E.D. Pa. 2005), the forum selection clause here designated Pennsylvania as *an* appropriate forum for an action enforcing the employment agreement, but not the sole appropriate forum for such an action. This is contrary to the express language of the agreement, which states that "this agreement shall exclusively be enforced by any federal or state court of competent jurisdiction in the Commonwealth of Pennsylvania." Apparently, Edwards missed the word "exclusively."

declined to pursue promotions.[5] Finally, the substantial monetary consideration backing the 2009 agreement suggests that Edwards's 2009 promotion and accompanying employment agreement—including the forum selection clause—were part of a mutually agreeable and mutually advantageous bargain between the parties, rather than a case where an employer overleveraged its power over an employee.[6] This is a thin reed alleged by Edwards, and it is not enough to make it "unfair, unjust, or unreasonable to hold [him] to his bargain." *Bremen*, 407 U.S. at 18.

In light of the valid forum selection clause, transferring to California would frustrate Synthes's legitimate expectations of litigating in Pennsylvania, while rewarding Edwards's willful abandonment of his commitment to do the same. Such a reward to Edwards is particularly inappropriate because, as Edwards asserts no inconvenience from litigating in Pennsylvania, he has no justification for filing in California rather than here. More generally, transfer in the presence of a valid forum selection clause renders such clauses only as valuable as winning a race to the courthouse, undermining the "vital interests of the justice system" which forum selection clauses promote. *See Atlantic Marine*, 134 S. Ct. at 581.

Second, transfer based on Edwards's apparent first-filing is inequitable because, according to his own statement, Edwards "initiated suit in one forum in anticipation of [Synthes's] imminent suit in another, less favorable, forum." *E.E.O.C.*, 850 F.2d at 976. Edwards attests in his affidavit that (1) prior to his resignation, his boss explicitly told him that Synthes

---

[5] To the contrary, Edwards states in his affidavit that he "was not aware of any associate sales consultant that remained an associate for an extended period of time and never transitioned into the sales consultant role."

[6] Edwards's reliance in his motion on *Dentsply Int'l Inc. v. Benton*, 965 F. Supp. 574, 577 (M.D. Pa. 1997), is misplaced. In *Dentsply*, a former employee contesting the forum selection clause in his employment agreement had signed the agreement in a mass signing related to a corporate merger, with the employer giving no consideration to the signees. *See id.* The employee in *Dentsply* argued that "he signed the agreement to save his job, and the clause is therefore the product of overreaching by Dentsply that should render it unenforceable." *See id.* at 578. The circumstances at play in *Dentsply* contrast sharply with those here, as Edwards signed the 2009 agreement individually in connection with a promotion.

would enforce his restrictive covenants if he left to work for a competitor, and (2) at the time he resigned, Edwards knew that Synthes frequently enforced employment agreements with sales consultants who left to work for competitors. According to Edwards, this is why he filed an action in federal district court in California on the same day that he resigned. Meanwhile, it is clear from the choice of law arguments in his briefs that Edwards views California law as more hostile to restrictive employment covenants than Pennsylvania law, and it is plain from the forum selection clause in Edwards's 2009 employment agreement that Synthes was likely to bring suit, if anywhere, in Pennsylvania. Edwards's California filing smacks of an opportunistic attempt to avoid a Pennsylvania forum, and "bad faith and forum shopping have always been regarded as proper bases for departing from the [first-filed] rule." *Id*. at 977

Finally, my retention of jurisdiction will not result in "judicial embarrassment of conflicting judgments" or disrupt "comity among federal courts of equal rank." *Id.* at 977, 971. According to the docket in the California case, our sister court there has not entered any substantive rulings related to the merits of the case or the jurisdictional issues raised by Synthes in its motions to dismiss or transfer, and the parties have not developed evidence in connection with that litigation. In contrast, substantial evidence has been developed in this case in connection with Synthes's motion for a preliminary injunction, including a completed period of expedited discovery and two days of sworn testimony before the court. *See id.* at 976 ("[C]ourts have rejected the rule when the second-filed action has developed further than the initial suit.").

I will not dismiss, transfer, or stay the action based on the first-filed rule.

### B. Personal Jurisdiction and Venue

Edwards next seeks dismissal or transfer on the bases that the court lacks personal jurisdiction over him and/or that venue does not properly lie in the Eastern District of

Pennsylvania. As to personal jurisdiction, Edwards contends that the expression of consent to the court's jurisdiction stated in his 2009 employment agreement is void due to the agreement's alleged invalidity, and that he otherwise lacks the necessary contacts with Pennsylvania. As to venue, Edwards similarly rejects that there is venue based on the forum selection clause on account of the agreement's alleged invalidity, and contends there is no venue otherwise under 28 U.S.C. § 1391.

The Eastern District of Pennsylvania has previously held that "[a] defendant may consent to personal jurisdiction and venue through a valid forum selection clause." *SKF USA Inc. v. Okkerse*, __ F. Supp. 2d __, 2014 WL 185221 (E.D. Pa. Jan. 15, 2014); *see also Neifeld v. Steinberg*, 438 F.2d 423, 427 (3d Cir. 1971) ("Want of personal jurisdiction and lack of venue can be waived by consent or conduct of the defendant."). As to personal jurisdiction, "[a]lthough in the usual case the plaintiff must show that the defendant has sufficient minimum contacts with the forum state such that the assertion of personal jurisdiction over him comports with notions of fair play and substantial justice, in actions involving forum selection clauses analysis of the contacts with the forum state is inappropriate." *Provident Mut. Life Ins. Co. of Philadelphia v. Bickerstaff*, 818 F. Supp. 116, 118 (E.D. Pa. 1993). "Instead, the court must consider the validity and effect of the forum selection clause in order to determine if there has been [] consent to [personal] jurisdiction." *Id*. (citing *Burger King Corporation v. Rudzewicz,* 471 U.S. 462, 475 (1985); *International Shoe Company v. Washington,* 326 U.S. 310, 320 (1945); and *Mellon Bank (East) PSFS National Association v. Farino,* 960 F.2d 1217, 1222 (3rd Cir. 1992)). Meanwhile, "where . . . a forum selection clause exists, its effect on the issue of the appropriateness of venue is essentially identical to its effect on the question of jurisdiction." *Id*.; *see also SKF USA Inc.*, 2014 WL 185221 ("Although venue may be proper in Louisiana as the defendants suggest, it is

clear that venue is also proper in this district in light of the forum selection clause and our determination that the defendants are subject to personal jurisdiction here.").

As previously discussed, Edwards cannot carry the heavy burden of proving that the forum selection clause is invalid. *See Bickerstaff*, 818 F. Supp. at 118. He has therefore consented to the jurisdiction of this court and venue in it*, see Neifeld*, 438 F.2d at 427, and I accordingly will not dismiss or transfer the action on either basis.

### C. Transfer under 28 U.S.C. § 1404

Edwards next contends that, even if I find dismissal or transfer unwarranted on one of the foregoing bases, I should nonetheless transfer the action to the Northern District of California under 28 U.S.C. § 1404. That provision states that, "for the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented. 28 U.S.C. § 1404(a). In arguing for transfer under § 1404, Edwards gives numerous reasons why he believes it is more practicable and equitable for the parties to litigate in California rather than in Pennsylvania. He urges me to give little weight to the forum selection clause because, even if it is valid, it purportedly permits but does not require litigation in Pennsylvania.

The Supreme Court recently held that a valid, exclusive forum selection clause is "given controlling weight in all but the most exceptional cases" under § 1404. *See Atlantic Marine*, 134 S. Ct. at 581. As it explained:

> When parties have contracted in advance to litigate disputes in a particular forum, courts should not unnecessarily disrupt the parties' settled expectations. A forum-selection clause, after all, may have figured centrally in the parties' negotiations and may have affected how they set monetary and other contractual terms; it may, in fact, have been a critical factor in their agreement to do business together in the

10

> first place. In all but the most unusual cases, therefore, "the interest of justice" is served by holding parties to their bargain.

*Atlantic Marine*, 134 S. Ct. at 583. As a result, "[w]hen parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation." *Id.* at 582. In turn, in evaluating a motion under § 1404 when there is a valid, exclusive forum selection clause, "a district court may consider arguments about public-interest factors only." *Id*.

As discussed previously, the forum selection clause in the 2009 agreement is valid and exclusive. Meanwhile, Edwards's arguments for transfer relate exclusively to private interests which the court may not consider: he does not allege that the public interest favors a California forum, nor do I see why that might be the case. Accordingly, in light of the valid, exclusive forum selection clause and the absence of public interest factors which might overcome the forum selection clause, I will not transfer the motion based on 28 U.S.C. § 1404.

### D.     Failure to State a Claim

Edwards finally seeks dismissal based on his contention that, under California law, Synthes fails to state a claim upon which relief may be granted. This is a motion under Rule 12(b)(6), which tests the legal sufficiency of a complaint. Fed. R. Civ. P. 12(b)(6). Ordinarily, in determining whether a complaint is sufficient, a court takes note of the elements the plaintiff must plead to state a claim, and, accepting all factual allegations in the complaint as true, determines whether the plaintiff's well-pleaded factual allegations plausibly give rise to an entitlement for relief. *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)). Here, we must take the additional step of identifying what law applies: as Edwards only seeks dismissal on the basis of California law, the motion fails if the applicable law is not that of California.

11

In determining what substantive state law to apply to a common law claim, "a federal court exercising diversity jurisdiction must apply the choice of law rules of the forum state." *Kruzits v. Okuma Mach. Tool, Inc.*, 40 F.3d 52, 55 (3d Cir. 1994) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 497 (1941)). Here, the forum state is Pennsylvania. In Pennsylvania, "courts generally honor the intent of the contracting parties and enforce choice of law provisions in contracts executed by them." *Id*. More specifically, where a choice of law clause is concerned, the "law of the state chosen by the parties to govern their contractual rights and duties will be applied . . . unless either (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue." *Id*.

Here, the 2009 agreement states that "this agreement will be governed by Pennsylvania law applicable to contracts entered into and performed in Pennsylvania." Meanwhile, neither condition provided by Pennsylvania for departing from a choice of law provision is satisfied. First, Pennsylvania bears a substantial relationship to the parties and this agreement: West Chester, Pennsylvania was Synthes's principal place of business at the time Edwards signed the agreement and began his employment with Synthes, and Synthes continued to operate its CMF business from West Chester for the duration of Edwards's employment. Second, whether or not application of Pennsylvania law would be contrary to fundamental policies of California, I cannot say that California's interest in the matter is materially greater than that of Pennsylvania. As Edwards contends, California has a substantial interest in this matter on account of Edwards's citizenship and pervasive contacts there with respect to his employment. However, as the Hon.

R. Barclary Surrick of this court recently explained in enforcing a clause in an employment agreement designating Pennsylvania substantive law:

> The fact that Defendants may live in [a particular state], work in [that state], or signed their agreements in [that state] does not necessarily establish that [state] has a materially greater interest than Pennsylvania. . . .
>
> Pennsylvania has an interest in enforcing a voluntarily negotiated contract that explicitly designates the application of Pennsylvania law. This interest stems, at least in part, from the recognition that uniformity of contract serves a strong public policy. *See Hopkins v. GNC Franchising, Inc.,* No. 05–1510, 2006 WL 2266253, at *4 (E.D. Pa. Jan. 13, 2006); *see also* Restatement (Second) of Conflict of Laws § 187 cmt. e (1971) ("Prime objectives of contract law are to protect the justified expectations of the parties and to make it possible for them to foretell with accuracy what will be their rights and liabilities under the contract."). Equally apparent is the fact that Pennsylvania has an interest in protecting companies that conduct business within its borders. The Supreme Court of Pennsylvania has recognized that non-competition agreements "have developed into important business tools to allow employers to prevent their employees and agents from learning trade secrets, befriending their customers and then moving into competition with them." *Victaulic Co. v. Tieman,* 499 F.3d 227, 237 (3d Cir. 2007) (quoting *Hess v. Gebhard & Co. Inc.,* 808 A.2d 912, 918 (Pa. 2002)). Therefore, although non-competition agreements are generally disfavored, courts have recognized that the public has an interest in the enforcement of agreements that are "freely entered into by the parties." *Coventry First, LLC v. Ingrassia,* No. 2005 WL 1625042, at *12 (E.D. Pa. July 11, 2005).

*SKF USA Inc.*, 2014 WL 185221 at *5. In *SKF USA Inc.*, Judge Surrick rejected the defendants' contention that Louisiana's interest in the case was materially greater than that of Pennsylvania, noting that it was not a case in which both parties were citizens of Louisiana, and that the choice of law clause at issue designated the law of a state in which the plaintiff-employer maintained a principal place of business. *See id.* at 6.

The analysis here is the same as in *SKF USA Inc.* Although Edwards may live, work, and have signed the 2009 agreement in California, Pennsylvania has a substantial interest in enforcing agreements freely entered into by the parties and related to business conducted within Pennsylvania borders. While Edwards is a citizen of California, Synthes is not, and the Synthes

division for which Edwards worked is based in Pennsylvania.[7] Accordingly, I cannot say that California's interest in this case is "materially greater" than that of Pennsylvania. *See Kruzits*, 40 F.3d at 55.

The parties have previously agreed that this dispute is to be decided under Pennsylvania law, and California's interest in the matter is not materially greater than the substantial interest of Pennsylvania. Pennsylvania law applies, *see id.*, and the motion to dismiss based on failure to state a claim under California law will be denied.

An appropriate order follows.

---

[7] I note further that it appears that Synthes was a Pennsylvania citizen at the time the agreement was signed.